J-S49038-16

2016 PA Super 137

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

GIOVANNI ROBERT MUCCI,

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2138 EDA 2015

Appeal from the Judgment of Sentence January 9, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002024-2013

BEFORE: PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.: FILED JUNE 29, 2016

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Delaware County following Appellant's conviction by a jury on the charges of aggravated assault (as to Police Officer David Snyder), 18 Pa.C.S.A. § 2702(a)(3), aggravated assault (as to Police Officer James Billie), 18 Pa.C.S.A. § 2702(a)(3), fleeing or attempting to elude a police officer, 75 Pa.C.S.A. § 3733(a), driving while under the influence of a controlled substance, 75 Pa.C.S.A. § 3802(d)(1), resisting arrest, 18 Pa.C.S.A. § 5104, possession of a controlled substance, 35 P.S. § 780-113(a)(16), and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Appellant presents sufficiency of the evidence claims, avers the jury's verdict is against the weight of the evidence, and argues the trial court erred in quashing Appellant's subpoenas *duces tecum*. We affirm.

_____

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: Appellant was arrested, and he served subpoenas *duces tecum* on fifteen individual police officers, as well as the Upper Darby Police Department, seeking personnel and disciplinary files for all of the officers involved in this matter. The Commonwealth filed a motion to quash the subpoenas *duces tecum*, and the trial court granted the motion. Upon Appellant's motion for reconsideration, the trial court held a hearing and subsequently reaffirmed its quashing of the subpoenas *duces tecum*. Appellant then proceeded to a jury trial at which numerous witnesses testified.[1]

Specifically, Police Officer Michael Taylor testified that, on September 13, 2012, he was in full uniform and on patrol in a marked vehicle when, at approximately 10:00 p.m., he came upon a silver Lincoln Navigator, which was travelling in the same direction as Officer Taylor. N.T. trial, 10/22/14, vol. I, 118-122. Officer Taylor testified that "[a]ll of a sudden, the silver Lincoln Navigator abruptly stopped in the middle of the street. [Appellant] then placed both of his hands out of the window as if I was conducting a felony stop." *Id.* at 122. Officer Taylor indicated that, "after approximately 20 seconds of [Appellant] staying in the middle of the roadway with his hands out of the window, [he] initiated [his] overhead lights and [prepared]

---

[1] Appellant chose to proceed to trial *pro se* with standby counsel.

to conduct a traffic stop to figure out. . .why [Appellant] abruptly stopped in the middle of the traffic." *Id.* at 123.

Officer Taylor indicated he had a "weird feeling" about Appellant's actions, so he called for back-up and did not approach Appellant until after a back-up officer, Police Officer Stephen Oreskovich, arrived. *Id.* As Officer Oreskovich approached the vehicle from the rear passenger side, Officer Taylor approached the driver, Appellant, "who appeared very nervous. His hands were actually trembling while he was talking to [the officer]." *Id.* at 124. Officer Taylor indicated that, during the conversation, Appellant kept reaching his hands "in and out" of the vehicle, and from his vantage point by the vehicle's b-post,[2] the officer was unable to determine whether Appellant had a weapon. *Id.* Officer Taylor testified Appellant indicated he was lost and trying to get back to Philadelphia; however, he continued to tremble and "continuously moved about the vehicle[.]" *Id.* at 125.

At this point, Officer Taylor decided to remove Appellant from the vehicle and conduct a pat-down for weapons. *Id.* Officer Taylor indicated:

> I asked [Appellant], you know, do you mind stepping back here so I can—I have to talk to you. So he said, sure, no problem, complied immediately, opened the door, took the first step out, took his left foot, placed it on the ground as if he was complying getting out of the vehicle, and then all of a sudden leached— leaped back into the car, began to slam the door shut. I ran back up. I was going to try to stop the door from shutting but I

---

[2] Officer Taylor explained the b-post is "the post that runs right behind the driver's seat basically where the door closes and opens[.]" *Id.*

became concerned for my safety at that point. I didn't know if he was jumping back in the car to retrieve a weapon or what he was actually—what his thought process was. So I drew my firearm and placed—positioned myself now instead of being to the rear, I repositioned myself almost in front of the mirror so if he was going for a weapon I had a clean shot and I was able to use force if necessary. At that point [Appellant] was having trouble, I don't know, getting the car in drive or starting the car. I'm not too sure. We were ordering him, stop, get out of the car, stop, get out of the car. He refused. At that point he cut the wheel in fact quickly over towards the left where we were standing. I was standing here. Officer Oreskovich was standing right—either right to my right or right to my left.

\*\*\*

When he did that, I was contemplating whether or not to actually fire at him because I was concerned that he was trying to strike me with his vehicle. There were—another back-up officer arriving with—that was going to be in my line of fire. I decided not to fire and I jumped clear of the vehicle along with Officer Oreskovich while [Appellant] fled.

*Id.* at 126-27.

Officer Taylor announced over the police radio that Appellant had fled and tried to strike him with his vehicle. *Id.* at 127. Officer Taylor testified that, as Appellant fled, he and other officers followed him in their vehicles with sirens and lights activated. *Id.* at 127-28. During the chase, Appellant did not stop his vehicle for stop signs, attempted to run another officer's vehicle off the road, and successfully ran a different officer's vehicle off the road and onto a lawn. *Id.* at 129. Additionally, Appellant turned his vehicle onto a one-way street in the wrong direction hitting two parked vehicles and struck a pursuing police vehicle, disabling it. *Id.* at 130. Officer Taylor testified that, at this point, a pursuing officer, Police Officer Amanda

Klingensmith, relayed on the radio that she observed a gun in Appellant's hand. *Id.* at 131. As Appellant tried to cut across a store parking lot, a police vehicle made contact with Appellant's vehicle, stopping it. *Id.* at 131-32. Officer Taylor testified the following occurred:

> We were ordering him to get out of the vehicle. As I ran up, they were still trying to struggle and get [Appellant] out of the vehicle. There w[ere] like three or four officers trying to pull him out of the vehicle. The whole time he was kicking, swinging, punching. [Appellant] was then placed on the ground. Once he fell to the ground, I believe initially he was on his back flailing, kicking, punching. They finally got him on his stomach and then after a violent struggle finally got both his hands behind his back and was able to place him in custody.

*Id.* at 132.

Officer Oreskovich confirmed he arrived as back-up for Officer Taylor and Appellant drove off during the police encounter. N.T. trial, 10/24/14, vol. I, at 170-71. During the pursuit of Appellant's vehicle, Officer Oreskovich observed as Appellant hit a police cruiser containing Officer David Snyder, a parked car, and another police cruiser containing Officer James Billie. *Id.* at 172-75. He also observed that, as Appellant attempted to cut across a store parking lot, a police cruiser being driven by Detective Francis George collided with Appellant's vehicle, thus stopping the pursuit. *Id.* at 176-77.

Officer Oreskovich testified that Appellant refused to exit his vehicle, so the police pulled him out of the vehicle. *Id.* at 177. He indicated Appellant struggled and would not permit the police to handcuff him. *Id.*

One officer dry stunned Appellant with a Taser, resulting in the police being able to handcuff Appellant. *Id.* at 178-81. Since Appellant's mouth was bleeding, Officer Oreskovich transported Appellant to the hospital. *Id.* at 181.

Police Officer Francis Devine testified he followed Officer Oreskovich as he transported Appellant to the hospital. N.T. trial, 10/24/14, vol. II, at 266. He indicated Appellant was physically able to walk into the hospital; however, he noticed Appellant staggered as he walked. *Id.* at 268. He indicated Appellant had slurred speech, pinpoint eyes, and "numerous periods of highs to lows." *Id.* at 269. He noted that, while the hospital staff attempted to evaluate Appellant, he would be calm and then, in an instant, become violent and belligerent. *Id.* Based on his observations and training, Officer Devine opined that Appellant was under the influence of a controlled substance and/or alcohol. *Id.* at 270. At this point, Officer Devine asked Appellant to submit to chemical testing of his blood, and Appellant replied, "[H]e might as well because he was snorting lines of meth all day and popping percs and that he was screwed anyway." *Id.* at 273. Officer Devine then observed as hospital personnel drew Appellant's blood. *Id.* at 275.

Police Officer James Billie testified he became involved in the car chase with Appellant and observed Appellant's vehicle strike a police car on Garrett Road. N.T. trial, 10/22/14, vol. II, at 317. At some point, Officer Billie

attempted to use his marked police vehicle, which had its lights and sirens activated, to block the path of Appellant's vehicle, and Appellant "slammed [his] car[,] pushed [him] out into the street[,] and then continued going." *Id.* at 318. Officer Billie continued following Appellant, and in an effort to stop him, Officer Billie hit the corner of Appellant's vehicle but Appellant did not stop. *Id.* Officer Billie then attempted to again block Appellant's vehicle's path, and Appellant struck Officer Billie's vehicle. *Id.* at 318-19. Officer Billie then used his vehicle to force Appellant's vehicle into a parking lot, struck the rear corner of Appellant's vehicle, and spun Appellant's vehicle into another officer's vehicle, thereby ending the car chase. *Id.* at 319. Officer Billie testified that, as a result of the incident, he suffered a herniated disc and shifted vertebrae, resulting in his inability to work. *Id.* at 320-21.

Police Officer David Snyder testified he became involved in the car chase at the location where Officer Taylor first approached Appellant. That is, as he pulled up to assist other officers, Appellant's Lincoln Navigator was leaving the scene. N.T. trial, 10/23/14, vol. I, at 6. Officer Snyder pursued Appellant's vehicle for approximately twenty minutes, during which time he observed Appellant "driving up one-way streets the wrong way, different directions, reckless[ly], careless[ly], [and] hit[ting] a few parked cars." *Id.* at 7. Officer Snyder indicated that, during the chase, he attempted to pull in front of Appellant's vehicle in an effort to stop it, and Appellant struck the

- 7 -

front of his vehicle. *Id.* As a result, Officer Snyder sustained lower back injuries, resulting in his inability to work as of the time of trial. *Id.* at 8, 11. Officer Snyder testified he pursued Appellant's vehicle for approximately three more minutes and then had no other involvement in the pursuit. *Id.* at 9. Officer Snyder confirmed he received the radio call that Appellant had been stopped in the parking lot and, by the time he responded to the location, Appellant was already in handcuffs. *Id.* at 9-10.

Police Officer Amanda Klingensmith indicated she became involved with the pursuit of Appellant's vehicle on Garrett Road and positioned her police vehicle, which had its lights and sirens activated, directly behind Appellant's fleeing vehicle. *Id.* at 76. She testified Appellant was travelling at 30 mph, and when he went through a yard, other police vehicles positioned themselves directly behind Appellant's vehicle. *Id.* at 78. Officer Klingensmith traveled in a different direction in an effort to block the path of Appellant's vehicle and, as she parked in the middle of the road, Appellant slowed down and swerved around her vehicle, at which point she "was able to see [Appellant] and it looked like he was holding a handgun[.]" *Id.* at 79-80. Officer Klingensmith broadcasted this information to the other officers. *Id.* at 81. Officer Klingensmith later arrived at a parking lot and observed Appellant being escorted to a police vehicle. *Id.*

Delaware County Police Detective Louis Grandizio testified the Upper Darby Police Department asked him to perform ballistics testing on a revolver, and he concluded the revolver was operable. *Id.* at 125.

Dr. Richard Cohen, who is a forensic toxicologist and pharmacologist, testified he was asked to test blood, which was taken from Appellant. He testified to the chain of custody with regard to Appellant's blood sample. *Id.* at 162-63. Dr. Cohen indicated his initial testing revealed that the blood sample taken from Appellant tested positive for benzodiazepine agents, opiates, and amphetamines. *Id.* at 153-54. Additional testing identified the drugs specifically as Clonazepam, Valium, oxycodone, and methamphetamine. *Id.* at 154-55. Based on the levels of the drugs found in Appellant's blood sample, Dr. Cohen opined to a reasonable degree of medical certainty that Appellant had ingested the drugs no more than a few hours prior to the taking of his blood. N.T. trial, 10/23/14, vol. II, at 161, 177. Dr. Cohen noted that methamphetamine is a stimulant and may make a person act aggressively. *Id.* at 162.

Detective Raymond Blohm testified that, on September 13, 2012, he was at the police station and heard about the car chase over the police radio. He decided to attempt to assist the patrol units in stopping Appellant's vehicle; however, by the time he arrived at the parking lot, officers were already attempting to remove Appellant from his vehicle. *Id.* at 180. Officer Blohm testified another officer told him there was a gun lying

on the other side of Appellant's vehicle and, when Officer Blohm ran around to the other side, he saw a black revolver lying on the ground just over seven feet from the passenger side of Appellant's vehicle. *Id.* at 180-82. The revolver was loaded, and its serial number was obliterated. *Id.* at 180-81.

Detective Blohm testified that, after Appellant was taken into custody, his vehicle was towed to the police station, where it was searched pursuant to a search warrant. In the vehicle, the police discovered a black handgun holster, a small baggie containing a white powdery substance, and a pill bottle containing several different types of pills. *Id.* at 188. Detective Blohm indicated the white powdery substance tested positive for methamphetamine. *Id.* at 189.

Dina Kruczaj, a forensic scientist for the Pennsylvania State Police Crime Lab, testified that the pill bottle at issue contained 42 white tablets, 4 orange tablets, 4 yellow tablets, and 22 white tablets wrapped in cellophane. N.T. trial, 10/24/14, vol. I, at 11-12. The 42 white tablets tested positive for oxycodone (a schedule II controlled substance), the 4 orange tablets tested positive for buprenorphine (a schedule II controlled substance), the 4 yellow tablets tested positive for cyclobenzaprine (a prescription drug), and the 22 white tablets wrapped in cellophane tested positive for clonazepam (a schedule IV controlled substance). *Id.* at 14-15.

Moreover, Ms. Kruczaj testified she received the small baggie containing the white powdery substance. She indicated the white powder weighed 0.52 grams and tested positive for amphetamines (a schedule II controlled substance). *Id.* at 15. She offered all of her opinions to a reasonable degree of scientific certainty. *Id.* at 16.

Detective Francis George testified he heard over the police radio that "an officer was out with a silver Lincoln Navigator that had just stopped in front of him with the operator sticking his hands out of the car window." N.T. trial, 10/24/14, vol. II, at 20. He responded to the scene and joined in the pursuit of Appellant's vehicle. He indicated the chase was not "at a crazy high rate of speed, but. . .the driver of the Navigator just would not comply. There were numerous sirens, lights, attempt[s] to pull him over. He went up and down numerous streets in the township leading. . .a line of police cars trying to stop him." *Id.* at 21. Detective George noted Appellant drove on the wrong way of a major thoroughfare and across a private lawn. *Id.* Detective George indicated that, as Appellant tried to cut across a store parking lot, he rammed his marked police vehicle into Appellant's vehicle, thus stopping it. *Id.* at 24.

Detective George testified that, as he pointed his duty weapon at Appellant and demanded to see his hands, Appellant threw a dark object out the passenger side window. *Id.* at 27. Appellant became "real fidgety," officers struggled to remove him from his vehicle, and after being removed,

Appellant lay on the ground, struggling and refusing to show the police his hands. *Id.* at 27-28. Detective George indicated that one of the officers dry stunned Appellant with a Taser four times, and finally, Appellant complied so that he could be handcuffed. *Id* at 29-30. Detective George denied that any police officer kicked Appellant. *Id.* at 30-31.

Dr. Christopher Williams, M.D., testified as a defense witness. He indicated he examined Appellant on September 14, 2012, and discovered broken blood vessels around Appellant's eye and traumatic iritic. N.T. trial, 10/28/14, vol. II, at 176. He also testified Appellant suffered a fractured orbital bone, which could have resulted from Appellant being kicked or punched in the face. *Id.* at 183-84. He also noted that such damage to Appellant's eye and orbital bone could have resulted from trauma to the face during a motor vehicle accident. *Id.* at 186.

Dr. Michael J. Dumin, M.D., also testified as a defense witness. He indicated he examined Appellant in the emergency room on September 14, 2012, and noted that Appellant's eyes were reactive to light. *Id.* at 204. He further noted Appellant's teeth were "moved out of place in a backward direction[,]" and he had abrasions on his chest. *Id.* at 204-05. He indicated Appellant suffered a fractured nasal bone and a fracture to the bones of the maxilla. *Id.* at 241. Dr. Dumin indicated his psychiatric exam included findings of "patient oriented to affect intoxicated, judgment poor, insight

poor, concentration poor." *Id.* at 231. He noted that Appellant informed the nurses he had been abusing meth. *Id.* at 244.

Appellant called Lieutenant Thomas Sharp as a defense witness. Lieutenant Sharp indicated that, when the car chase came to an end, it appeared that Appellant was attempting to exit his car from the front passenger side. N.T. trial, 10/28/14, at 55. He noted he saw Appellant in possession of a handgun. *Id.* at 74. He further indicated that it appeared Appellant was being pulled out of and trying to climb out of the driver's side window of his vehicle, and he did not observe Appellant punching or kicking any officers. *Id.* at 55-59. He noted Appellant did not appear to be hurt when he was trying to exit his vehicle. *Id.* at 57. Lieutenant Sharp testified Appellant landed on his feet after exiting his vehicle. *Id.* at 66. He noted Appellant was not cooperative, and it took four officers to "get control of [him]." *Id.* at 68. He denied that any officer kicked Appellant or "smashed his head into the ground." *Id.* at 102. Lieutenant Sharp admitted that, as Appellant lay on the ground with his arms underneath his body, he punched Appellant in the arm, and then in the head, in an effort to gain control of Appellant's arms as he feared Appellant was holding a firearm underneath his body. *Id.* at 104-05. He noted the punches had "no effect on [Appellant] whatsoever." *Id.* at 104. He indicated Appellant was acting like "a beast." *Id.* at 105.

At the conclusion of all testimony, the jury convicted Appellant of the offenses indicated *supra*, and he was sentenced to an aggregate of ten years to twenty-two years in prison, to be followed by four years of probation. Appellant filed a timely, counseled post-sentence motion raising, *inter alia*, weight of the evidence claims. The trial court denied the motion on June 19, 2015, and this timely, counseled appeal followed. All Pa.R.A.P. 1925 requirements have been met.

Appellant presents the following issues:

1. Whether the conviction of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(3), regarding Officer James Billie, was based on insufficient evidence, where the circumstances of the pursuit showed that Appellant lacked the specific intent to injure Officer Billie?

2. Whether the conviction of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(3), regarding Officer James Billie, was based on insufficient evidence that Appellant caused the injuries suffered by the officer?

3. Whether the conviction of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(3), regarding Officer David Snyder, was based on insufficient evidence, where the circumstances of the pursuit showed that Appellant lacked the specific intent to injure Officer Snyder?

4. Whether the conviction of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(3), with respect to Officer James Billie is against the weight of the evidence, where the circumstances demonstrate that Officer Billie's injuries could have been caused by his own action of ramming Appellant's vehicle?

5. Whether the convictions of Aggravated Assault, 18 Pa.C.S.A. § 2702(a)(3), are against the clear weight of the evidence which demonstrated that Appellant was driving slowly when he collided with the officers' vehicles and the facts and circumstances of the pursuit demonstrate that Appellant did not harbor an intent to injure the officers?

6. Whether the trial court committed legal error and abuse of discretion, and violated right [*sic*] Appellant's right to due process of law, compulsory process, confrontation of witnesses and a fair trial, as guaranteed Appellant by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 8 and 9 of the Pennsylvania Constitution, by granting the motion of Upper Darby Township to quash subpoenas served on the township, where the issue at trial was the credibility of the officers and the material requested included medical records of the injured officers as well as pre-trial statements made by the officers concerning the incident, and where the subpoenas served requested disciplinary action against the pursuing officers for using excessive force, relevant in determining whether any of the officers acted as the aggressor?

Appellant's Brief at 4-5.

In his first, second, and third issues, Appellant presents sufficiency of the evidence claims. Specifically, he claims the evidence was insufficient to sustain his convictions for aggravated assault, 18 Pa.C.S.A. § 2702(a)(3), as to Officers Billie and Snyder. In this vein, as to Officer Billie, Appellant contends the evidence reveals Appellant lacked the specific intent necessary to prove he attempted to cause bodily injury to Officer Billie and/or that he intentionally caused bodily injury to Officer Billie. As to Officer Snyder, Appellant contends the evidence reveals Appellant lacked the specific intent necessary to prove he attempted to cause bodily injury to Officer Snyder.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not

- 15 -

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010) (quotation omitted).

18 Pa.C.S.A. § 2702(a)(3) provides that "[a] person is guilty of aggravated assault if he:. . . (3) attempts to cause or intentionally or knowingly causes bodily injury to any. . officers,. . .in the performance of duty[.]" 18 Pa.C.S.A. § 2301 defines "bodily injury" as "impairment of physical condition or substantial pain."

[I]n a prosecution for aggravated assault on an officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that [an appellant] intended to cause injury.

*Commonwealth v. Rahman*, 75 A.3d 497, 502 (Pa.Super. 2013) (quotation marks, quotation, and emphasis omitted).

Here, Appellant does not dispute that Officers Billie and Snyder were "officers" who were acting "in the performance of duty" when they engaged

in the pursuit of Appellant. However, Appellant contends he did not attempt to cause or intentionally or knowingly cause bodily injury to the officers.

With regard to Officer Billie, the evidence establishes that he suffered bodily injury, consisting of substantial pain from a herniated disc and shifted vertebrae. This bodily injury occurred as a result of his police cruiser impacting several times with Appellant's vehicle during the officer's pursuit of Appellant, including two times when Officer Billie attempted to block the path of Appellant's vehicle and Appellant intentionally collided with Officer Billie's police vehicle. Thus, the elements of the crime in question were sufficiently proven by the Commonwealth as to Officer Billie. **See** 18 Pa.C.S.A. § 2702(a)(3).

We find no merit to Appellant's suggestion that the evidence failed to prove he caused the bodily injury to Officer Billie since Officer Billie admitted that he twice took the initiative and "rammed into" Appellant's vehicle. Appellant suggests it is "just as likely" Officer Billie was injured when he ran into Appellant's vehicle, as opposed to when Appellant ran into the officer's vehicle. Appellant's attempts to relieve himself of criminal culpability is unavailing. The evidence plainly reveals that, whether Officer Billie was injured when he "rammed into" Appellant's vehicle, or vice versa, Officer Billie was acting in accordance with his duty in attempting to stop Appellant's fleeing vehicle.

Moreover, to the extent Appellant suggests the force with which his vehicle and Officer Billie's vehicle impacted would not have been sufficient to cause the injuries alleged by Officer Billie, such an argument goes to the weight, and not sufficiency of the evidence. Simply put, under the appropriate standard of review, the evidence sufficiently establishes Appellant intentionally caused bodily injury to Officer Billie while in the performance of his duties.

With regard to Officer Snyder, he testified that, during the chase, he attempted to pull in front of Appellant's vehicle in an effort to stop it, and Appellant struck the front of his vehicle. As a result, Officer Snyder sustained lower back injuries, resulting in his inability to work as of the time of trial. Based on this testimony, the Commonwealth sufficiently established that Appellant intentionally caused bodily injury to Officer Snyder in the performance of his duty, thus establishing the necessary elements for aggravated assault.[3] *See id.*

---

[3] Alternatively, as to Officers Billie and Snyder, assuming, *arguendo*, the Commonwealth did not prove they actually suffered bodily injury as a result of the incident, the evidence sufficiently demonstrates Appellant attempted to cause bodily injury to them during the performance of their duty. **See Rahman**, **supra**. For instance, the evidence reveals Appellant intentionally collided with both officers' vehicles when they attempted to block the path of or pulled in front of Appellant's fleeing vehicle. **See Commonwealth v. Burns**, 568 A.2d 974, 977 (Pa.Super. 1990) (where the appellant bore down on officers in his tractor-trailer and forced them off the road when they attempted to pass him, and showed no intention of stopping, the evidence supported a finding of specific intent for purposes of aggravated assault). *(Footnote Continued Next Page)*

In his fourth and fifth issues, Appellant presents weight of the evidence claims. Specifically, he alleges the jury's verdict finding him guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(3) as to Officers Billie and Snyder is against the weight of the evidence. In this vein, he alleges his slow rate of speed demonstrates he lacked the requisite *mens rea*. Moreover, he notes that the evidence reveals he was only attempting to escape and lacked any intent to injure the officers. Finally, he suggests it is just as likely Officer Billie was injured by his own actions, *i.e.*, ramming Appellant's vehicle, as it is that he was injured by Appellant's actions, *i.e.*, colliding with Officer Billie's patrol vehicle when it blocked Appellant's vehicle's path.

The Supreme Court has set forth the following standard of review for weight of the evidence claims:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

> \* \* \*

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge

*(Footnote Continued)* ————————

Thus, the evidence was sufficient to sustain Appellant's aggravated assault convictions on this basis, as well.

on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

\* \* \*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013) (quotation marks, quotations, and citations omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa.Super. 2003) (quotation marks and quotations omitted).

Here, as to Appellant's claim the evidence reveals he lacked the requisite *mens rea* for aggravated assault since he drove at a slow rate of speed and was "just trying to escape," the jury was free to consider these factors along with the other evidence presented at trial. Inasmuch as the evidence reveals Appellant purposefully collided with the officers' marked vehicles and led the police on a chase lasting over twenty minutes, the fact the jury found Appellant had the requisite *mens rea* for aggravated assault does not "shock one's sense of justice." ***See id.***

Moreover, as to Appellant's claim the evidence suggests it is just as likely Officer Billie was injured by his own actions, *i.e.*, ramming Appellant's vehicle, as it is that he was injured by Appellant's actions, *i.e.*, colliding with Officer Billie's patrol vehicle when it blocked Appellant's vehicle's path, the jury was free to weigh the testimony in this regard. In any event, assuming, *arguendo*, the jury concluded Officer Billie was injured when he took the initiative of making contact with Appellant's vehicle in an effort to stop the fleeing vehicle, the jury's verdict finding Appellant guilty of aggravated assault as to Officer Billie is not against the weight of the evidence in this regard. As indicated *supra*, Officer Billie was acting in the performance of his duty in attempting to stop Appellant, who drove his vehicle recklessly through residential neighborhoods, striking parked cars and driving through private lawns in the process.

> As the trial court suggested in its opinion:

> The jury was free to listen to the witnesses and weigh the evidence presented. The jury weighed the credibility of the witnesses and determined [Appellant] to be guilty beyond a reasonable doubt on all aggravated assault charges. There is nothing in the record to support [the conclusion] that the fact-finder's verdict is so contrary to the evidence that it shocks one's sense of justice.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 12/16/15, at 8. We find no abuse of discretion in this regard. **See Sullivan**, **supra**.

In his final claim, Appellant alleges the trial court abused its discretion in quashing subpoenas *duces tecum*, which Appellant served upon fifteen

individual officers, as well as the Upper Darby Police Department, seeking personnel and disciplinary files for all of the officers involved in this matter. Appellant sought documentation pertaining to (1) police internal affairs investigations regarding the unlawful use of force by the officers in any case, (2) police internal affairs investigations regarding the unlawful use of force by any officer with regard to Appellant's case, and (3) medical and personnel records pertaining to any officers' time off from work and/or injuries related to the within pursuit.

> Whether a subpoena shall be enforced rests in the judicial discretion of the court. We will not disturb a discretionary ruling of a [trial] court unless the record demonstrates an abuse of the court's discretion. So long as there is evidence which supports the [trial] court's decision, it will be affirmed. We may not substitute our judgment of the evidence for that of the [trial] court.
>
> "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." **Commonwealth v. Jackson**, 785 A.2d 117, 118 (Pa.Super. 2001).

**Commonwealth v. Walsh**, 36 A.3d 613, 620 (Pa.Super. 2012) (quotation omitted).

With regard to obtaining the personnel records of police officers, our Supreme Court has held that "a defendant must first articulate a reasonable basis for his request; a criminal defendant is not entitled to a 'wholesale inspection' of investigatory files." **Commonwealth v. Blakeney**, 596 Pa. 510, 536, 946 A.2d 645, 661 (2008) (citations omitted).

In explaining the reasons it granted the Commonwealth's motion to quash the subpoenas *duces tecum*, the trial court indicated the following:

> The trial court found the overly broad subject of the subpoenas to be irrelevant to the prosecution and defense of the above captioned case. It was clear to this Court that the subpoenas were nothing more than an impermissible "fishing expedition" with the result of violating the privacy of the police officers. [Appellant] never articulated a reasonable basis for seeking the requested documents[.]
>
> Given the scope of the subpoenas, and failure of [Appellant] to articulate a valid reason that would make the production of the documents requested relevant to the pending proceedings; it was clear to the trial court that [Appellant] was on a fishing expedition[.]

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 12/16/15, at 14.

We find no abuse of discretion in this regard. Appellant was on a "fishing expedition," hoping to find something in the personnel and disciplinary files which might impeach the credibility of the officers involved in this case. He simply did not articulate a reasonable basis for his request which was likely to produce admissible evidence. ***See Blakeney***, ***supra***; ***Commonwealth v. Mejia–Arias***, 734 A.2d 870, 876 (Pa.Super. 1999). Having failed to do so, Appellant is not entitled to relief on this basis.[4]

---

[4] Moreover, assuming, *arguendo*, the trial court erred in quashing the subpoenas, we conclude any error with regard thereto is harmless. ***See Commonwealth v. Young***, 561 Pa. 34, 85, 748 A.2d 166, 193 (1999) ("An error will be deemed harmless if. . .the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.").

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2016