J-S67044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GIOVANNI ROBERT MUCCI, | : | |
| | : | |
| Appellant | : | No.  1754 EDA 2018 |

Appeal from the PCRA Order April 30, 2018
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002024-2013

BEFORE:  OTT, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 04, 2019**

Giovanni Robert Mucci (Appellant) appeals from the order dismissing his motion for new trial based upon after-discovered evidence, which the trial court treated as a petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Upon review, we affirm.

We provide the following background.  On October 30, 2014, Appellant was found guilty of numerous charges stemming from actions that occurred on September 13, 2012.  That evening, around 10:00 p.m., Officer Michael Taylor of the Upper Darby Township Police Department observed a silver Lincoln Navigator stop suddenly in the middle of the street.  The car remained there for approximately 20 seconds, when Officer Taylor decided to initiate a

_____

* Retired Senior Judge assigned to the Superior Court.

traffic stop to determine why the car was stopped in the middle of the street. Officer Taylor also called for back up[1] and decided not to approach the car until other officers arrived.

The first officer to respond was Officer Stephen Oreskovich. Once Officer Oreskovich arrived, Officer Taylor approached the driver, who was later identified as Appellant. According to Officer Taylor, Appellant appeared nervous, his hands were trembling, and Officer Taylor was unable to determine if Appellant had a weapon. Thus, Officer Taylor asked Appellant to step out of the vehicle to conduct a pat down for weapons. Appellant opened the driver's side door, placed his left foot on the ground as if he were going to step out of the vehicle, "then all of a sudden [leaped] back into the car [and] began to slam the door shut." N.T., 10/22/2014, at 126. Despite being ordered to stop and get out of the car, Appellant started the vehicle, attempted to strike Officer Taylor, and fled the scene in his vehicle, all of which Officer Taylor announced over the police radio.

A police chase ensued, with a number of police vehicles chasing Appellant. During the course of this chase, Appellant violated traffic laws, hit a parked vehicle, and hit police vehicles occupied by Officer David Snyder and

---

[1] At the police station, Officer Francis George received that call. At trial, Officer George testified that "a call came over the police radio that an officer was out with a silver Lincoln Navigator that had just stopped in front of him with the operator sticking his hands out the car window." N.T., 10/24/2014, at 20. Believing this to be "odd", Officer George "jumped in [his] police car with [his] partner[, Officer Shawn Kenney,] and [they] drove to the scene." *Id*.

Officer James Billie. An officer in one of the vehicles chasing Appellant, Officer Amanda Klingensmith, "relayed on the radio that she observed a gun in Appellant's hand." *Commonwealth v. Mucci*, 143 A.3d 399, 404 (Pa. Super. 2016). "[A]s Appellant attempted to cut across a store parking lot, a police cruiser being driven by [Officer] George collided with Appellant's vehicle, thus stopping the pursuit." *Id*. "[Officer] George testified that, as he pointed his duty weapon at Appellant and demanded to see his hands, Appellant threw a dark object out the passenger side."[2] *Id*. at 407 (citing N.T., 10/24/2014, at 27). "Officer Oreskovich testified that Appellant refused to exit his vehicle so the police pulled him out of his vehicle." *Id*. at 404. After Appellant was pulled from the vehicle, a struggle ensued, and officers had to Taser Appellant in order to subdue him.

Eventually, Appellant was handcuffed and transported to a local hospital. According to Officer Francis Devine, based upon his observations of Appellant at the scene, he believed "Appellant was under the influence of a controlled substance and/or alcohol." *Id*. at 404. Blood testing at the hospital confirmed that Appellant's blood was positive for "benzodiazepine agents, opiates, and amphetamines." *Id*. at 405. Furthermore, upon searching Appellant's vehicle pursuant to a warrant, "police discovered a black handgun

---

[2] Later, Detective Raymond Blohm recovered a black revolver approximately seven feet from the passenger side of Appellant's vehicle.

holster, a small baggie containing a white powdery substance, and a pill bottle containing several different types of pills." *Id*. at 406.

As a result of this incident, Appellant was charged with numerous crimes related to the injuries that occurred to police officers involved in the chase, his reckless driving and fleeing from police officers, resisting arrest, and possession of controlled substances and paraphernalia. Prior to his jury trial, Appellant requested, and was granted, permission to proceed *pro se*.[3] In addition, he served subpoenas on 15 individual police officers, as well as the Upper Darby Police Department, seeking disciplinary files for all of these officers. The Commonwealth moved to quash these subpoenas, and the trial court granted that motion.

A jury trial commenced on October 20, 2014. At trial, with Appellant representing himself, many officers testified about the incident as discussed *supra*. Appellant's defense was that he acted reasonably under the circumstances, and that the officers used more force than was necessary to subdue him.

The jury convicted Appellant of aggravated assault as to Officer Snyder, aggravated assault as to Officer Billie, fleeing or attempting to elude a police officer, driving under the influence of a controlled substance, resisting arrest, possession of a controlled substance, and possession of drug paraphernalia. On January 9, 2015, Appellant was sentenced to an aggregate term of 10 to

---

[3] Appellant was appointed stand-by counsel.

- 4 -

22 years of incarceration to be followed by four years of probation. Appellant, through counsel, timely filed post-sentence motions, which were denied. Appellant timely filed a notice of appeal, and a panel of this Court affirmed Appellant's judgment of sentence on June 29, 2016. *Mucci*, 143 A.3d at 412. Appellant timely petitioned our Supreme Court for allowance of appeal.

Prior to our Supreme Court's ruling on Appellant's petition, Appellant, through counsel, on January 17, 2017, filed a motion for a new trial based upon after-discovered evidence, as well as a petition for remand with our Supreme Court. By way of background, after Appellant was arrested in this matter, he instituted a civil lawsuit against the Upper Darby Township Police Department and officers involved in this case in the United States District Court for the Eastern District of Pennsylvania. During discovery for those proceedings, Appellant was provided with a document dated September 14, 2012, entitled "Upper Darby Township Police Department Use of Force Report" (the Report) authored by Officer George. Motion for New Trial, 1/17/2017, at ¶ 7. In the Report, Officer George detailed Appellant's actions after Officer George's vehicle ran into Appellant's vehicle. Officer George wrote that Appellant "had just thrown [a] firearm from vehicle and put hands out driverside (*sic*) window." *Id*. at ¶ 8, Exhibit A. The Report also provided that Appellant's hands remained outside the driver's side window, even though Appellant refused commands to exit the vehicle. *Id*. Appellant contends that this information was contrary to Officer George's testimony at trial. *Id*. at ¶ 9.

- 5 -

Appellant argues that the Report entitles him to a new trial on the resisting arrest charge, because it shows that Appellant was "cooperative with police but that police utilized excessive force in apprehending him." *Id*. at ¶ 14.

On April 11, 2017, our Supreme Court denied both Appellant's petition for allowance of appeal and his petition for remand. ***Commonwealth v. Mucci***, 168 A.3d 1252 (Pa. 2017). On August 8, 2017, the trial court concluded that Appellant's motion for new trial based upon after-discovered evidence should be treated as a PCRA petition and ordered the Commonwealth to file a response. The Commonwealth filed a response, and on September 29, 2017, the PCRA court filed notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a response, and the PCRA court conducted a proceeding to discuss the positions of Appellant and the Commonwealth on April 13, 2018. ***See generally***, N.T., 4/13/2018. On April 30, 2018, the PCRA court denied Appellant's petition.

Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. On appeal, Appellant contends the PCRA court erred in denying the petition because the Report contained "substantive evidence [that] contradicted sworn testimony given by [Officer George] at trial." We review this issue mindful of the following.[4]

---

[4] We would be remiss not to point out a procedural issue in this case. Pennsylvania Rule of Criminal Procedure 720(C) provides that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The comment to that rule provides the following.

Our standard of review of an order granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and whether it is free of legal error…. After-discovered evidence is a basis for a new trial only if it: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; **after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge**; and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA.

Pa.R.Crim.P. 720 (comment) (emphasis added).

Instantly, Appellant filed his motion for a new trial on January 17, 2017, which was prior to our Supreme Court's ruling on his petition for allowance of appeal. In addition, on the same day, Appellant filed with our Supreme Court an application for remand for a hearing on a motion for new trial based upon after-discovered evidence. The Supreme Court subsequently denied Appellant's application for remand. However, it is unclear what effect the Supreme Court's order had on the procedural posture of Appellant's motion for new trial filed with the trial court, which was filed before the completion of Appellant's direct appeal. Moreover, the PCRA does not come into effect until a judgment of sentence becomes final. *See* 42 Pa.C.S. § 9545(b)(1). Here, Appellant's judgment of sentence became final on July 10, 2017, after Appellant did not file a petition for writ of *certiorari* to the United States Supreme Court. Thus, Appellant's motion for new trial was filed prior to his right to be able to file a PCRA petition. Nevertheless, at the hearing, counsel for Appellant told the court that this motion for a new trial was a PCRA petition. N.T., 4/13/2018, at 10. In addition, the standard for whether Appellant is entitled to a new trial under a timely-filed PCRA petition or a motion for new trial based upon after-discovered evidence is the same.

- 7 -

*Commonwealth v. Cobbs*, 759 A.2d 932, 934 (Pa. Super. 2000) (internal citations omitted).

At issue in this case is the Report, and specifically the portion of the Report where Detective George writes that after Appellant threw an object from the vehicle, he "put [his] hands out [the] driversside [*sic*] window." Motion for New Trial, 1/17/2017, at Exhibit A. According to Appellant, this new information could not have been discovered prior to trial,[5] is not merely corroborative or cumulative, will not be used solely for impeachment, and if it were available during trial, the outcome of the trial on the resisting arrest charge and aggravated assault charges[6] would have been different. *See* Appellant's Brief at 31-34. Appellant argues that Officer George's writing this information in the Report, while then testifying to the opposite at trial, is substantive evidence that Appellant "tried to surrender and if a finder of fact

---

[5] The Commonwealth does not contest this point.

[6] In his motion for new trial, Appellant requested a new trial on the resisting arrest charge based upon the Report. *See* Motion For New Trial, 1/17/2017, at ¶ 14. In addition, he requested a new trial on the aggravated assault charge related to Officer Billie based on information he learned during a deposition of another officer. *Id*. at ¶¶ 15-23. On appeal, Appellant argues that the Report entitles him to a new trial on both the aggravated assault and resisting arrest charges. *See* Appellant's Brief at 35. It is not entirely clear whether his claim that the Report entitles him to a new trial on the aggravated assault charge is a claim he failed to raise in the trial court in violation of Pa.R.A.P. 302(a). However, based upon our discussion *infra*, it does not matter, because Appellant has not satisfied this Court he is entitled to relief.

accepts that conclusion, the rest of Appellant's defense falls into place." *Id*. at 35.

The trial court considered this argument and concluded that "the information contained in the Report is not new, [and] it merely corroborates the information contained in the Police Incident Report regarding the position of [Appellant's] hands." Trial Court Opinion, 7/19/2018, at 2. In addition, the trial court concluded that the information in the Report would not likely result in a different verdict. *Id*.

We begin by considering whether the Report is corroborative or cumulative, which was recently defined by our Supreme Court in *Commonwealth v. Small*, 189 A.3d 961 (Pa. 2018), and referred to as the "same point, same character test." *Id*. at 973.

> [A]fter-discovered evidence is merely corroborative or cumulative — and thus not sufficient to support the grant of a new trial — if it is of the same character and to the same material point as evidence already adduced at trial. It is clear the terms "of the same character" and "to the same point" refer to distinct qualities of evidence; to be "merely corroborative or cumulative," newly discovered evidence must tend to prove material facts that were already in evidence at trial, and also be of the same grade or character of evidence as that produced at the trial to prove those material facts. If the new evidence is of a different and "higher" grade or character, though upon the same point, or of the same grade or character on a different point, it is not "merely" corroborative or cumulative, and may support the grant of a new trial based on after-discovered evidence.

*Id*. at 973–74 (citations omitted).

During direct examination at trial, Officer George offered the following description of the events after Appellant's car was forced to stop.

[Officer George:] We were ordering [Appellant] to show me his hands, show me his hands, show his hands. Immediately – when we immediately hit and I was still in the car I was focused on [Appellant]. We kind of – you know, we kind of got rocked a little bit. He kind of – he was leaning over his seat. I saw him throw a dark colored – a dark object out the passenger side window. I didn't know what it was, but it was, you know, some object that was dark. Again, I got out and was ordering him commands at gunpoint to show me his hands.

[Commonwealth:] Did he put his hands up?

[Officer George:] He initially did, and then when Officer Kenny was on the driver's side he – I think right now there is another officer. Officer Oreskovich was over with Officer Kenn[e]y. [Appellant] became real fidgety and put his hands down and stopped complying.

N.T., 10/24/2014, at 26-27.

Upon cross-examination, Appellant presented Officer George with the police incident report filed by Officer George. In that report, Officer George wrote that Appellant "was seen throwing a dark object out of the passenger side window before displaying his hands." N.T., 10/24/2014, at 56. Appellant asked Officer George specifically whether he saw Appellant's hands out the driver's side window. Officer George stated, "You never put your hands out the window." *Id*. at 57. It is this answer that is contradicted by the Report.

Instantly, there is no question that a police incident report and the Report are of the same quality. Both reports were authored by the same police officer shortly after this incident. Furthermore, both reports indicate that Appellant's hands were displayed, with the Report adding the hands were "out" the window. Motion for New Trial, 1/17/2017, at Exhibit A. Thus, the

Report and the police incident report were of similar, but not the same character. Accordingly, we conclude the PCRA court erred in determining that the Report was "merely cumulative or corroborative." Trial Court Opinion, 7/19/2018, at 2.

However, what is clear is that this one small point was not enough for a jury to reach a different verdict on the resisting arrest charge. There is no question that shortly after displaying his hands, whether inside or outside the driver's side window, Appellant stopped complying with orders from the officers. **See** N.T., 10/22/2014, at 132 (testimony from Officer Taylor explaining that officers were "trying to struggle and get [Appellant] out of the vehicle" and the "whole time he was kicking, swinging, punching"). In addition, there was testimony that Appellant continued to struggle once he was handcuffed. **See** N.T., 10/28/2014, at 9 (testimony from Detective Lydon stating that when Appellant was being escorted to the police vehicle in handcuffs, he was "actively pulling away and [] kind of kicking at the officers as they were taking him").

Based on the foregoing, even if Appellant were able to present evidence that his hands were outside the window, and the jury believed that evidence, such evidence "is [not] of such a nature and character that a different verdict will likely result if a new trial is granted." **Cobbs**, 759 A.2d at 934. Accordingly, we agree with the PCRA court that Appellant is not entitled to a new trial based upon this after-discovered evidence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/4/19