J-S30002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FLORENCIA NIETO-VIDES, | |
| Appellant | No. 1797 MDA 2016 |

Appeal from the Judgment of Sentence March 25, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000097-2015

BEFORE:  SHOGAN, RANSOM, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 21, 2017**

Appellant, Florencia Nieto-Vides, appeals from the judgment of sentence[1] entered following her conviction by a jury of one count each of forgery, attempted forgery, conspiracy to commit forgery, attempted theft by deception, and conspiracy to commit theft by deception.[2]  We affirm.

---

[1]  Appellant incorrectly asserts that this is an appeal from the denial of post-sentence motions.  Where post-sentence motions are filed, the appeal is properly from the judgment of sentence made final by the denial of the post-sentence motions.  ***Commonwealth v. Kuykendall***, 2 A.3d 559, 560 n.1 (Pa. Super. 2010).

[2]  18 Pa.C.S. §§ 4101; 901 and 4101; 903 and 4101; 901 and 3922; and 903 and 3922; respectively.  While Appellant was convicted of one forgery count, she had been charged with thirty counts of forgery.  Information, 2/23/15, at Counts 3–32.

We summarize the facts of the case as follows: On December 23, 2014, Appellant attempted to purchase apples and a bag of potato chips with a $100 bill at Redner's Market ("Redner's"), a grocery store in Fredericksburg, Pennsylvania. N.T., 3/9/16, at 6, 11, 14. Pursuant to Redner's store policy, employees verify the legitimacy of all fifty and one-hundred-dollar bills by running them through the store's fraud scanners. *Id.* at 10–11. When the scanner detects problems with a bill, the scanner ejects the bill and displays an error code. *Id.* at 10. An employee informed Redner's manager, Jason Krick, earlier that day that the scanner had rejected a bill tendered by an unidentified individual. *Id.* at 16. That individual left the store to obtain other money, but never returned to the store. *Id.* at 16–17.

Mr. Krick ran the $100 bill tendered by Appellant through the store's scanner and received an error code. N.T., 3/9/16, at 12. He then ran the bill through the store's second scanner and again received an error code. *Id.* Mr. Krick testified at trial that he ran Appellant's $100 bill through both machines approximately a dozen times, and each time the respective scanner displayed an error code. *Id.* Mr. Krick also testified that the bill looked unusual; Appellant's bill "did not change colors in the corners," even though most bills "typically go from green to dark black," and it displayed a different watermark. *Id.* at 16. Mr. Krick stated that Appellant's $100 bill looked similar to the bill obtained from the unknown individual earlier in the

day. *Id.* at 16–17. Both bills were admitted into evidence at trial. *Id.* at 17–18.

Mr. Krick, in accordance with store policy, telephoned the Pennsylvania State Police and then informed Appellant of his concern. N.T., 3/9/16, at 18–19. While Appellant initially presented by herself, two men later identified as Roberto Corona-Gavilan and Candido Munoz joined her while Mr. Krick explained the actions he had undertaken. *Id.* at 13–14, 20, 25. Appellant provided Mr. Krick with her address and telephone number and told him to contact her "when everything was okay." *Id.* at 20. At that point, Appellant was "trying to leave the store," but ultimately did not leave. *Id.* During trial, Mr. Krick described Appellant initially as "quiet and subdued" while she waited for the police. *Id.* at 19.

Pennsylvania State Trooper John Huffstutler arrived in response to Mr. Krick's call. N.T., 3/9/16, at 24. Trooper Huffstutler searched Appellant's purse and found a $100 bill that was "almost identical" to the bill Appellant had attempted to use earlier. *Id.* at 26–27. The purse also held $873 in smaller bills. *Id.* at 28. Trooper Huffstutler then obtained a search warrant for the white Ford Excursion in which Appellant and her two companions were travelling. *Id.* at 30. Inside the vehicle was a black backpack which held women's toiletries and a cigarette box containing eighteen $100 bills. *Id.* at 30–32, 42–43. In addition, the black backpack held $1,827 in smaller

currency. *Id.* at 35. Some of the $100 bills found in the black backpack had identical serial numbers. *Id.* at 30.

Trooper Huffstutler additionally testified to the existence of over thirty shopping bags in the car. N.T., 3/9/16, at 37. The shopping bags held "mostly female items" from stores at the Premium Outlets in Tannersville and the Harrisburg East Mall. *Id.* at 43–44. Photo identifications obtained by Trooper Huffstutler identified Appellant and the two men as residents of Brooklyn, New York. *Id.* at 45–46.

On July 8, 2015, Appellant was charged in relation to the incident at Redner's. A jury trial was held on March 9, 2016. The Commonwealth originally sought to hold Appellant culpable for forgery in connection with the items in the shopping bags found in the Ford Excursion; however, the trial court granted Appellant's motion for acquittal regarding those charges after the evidence presented by the Commonwealth failed to establish conclusively that Appellant used counterfeit bills to purchase the items. N.T., 3/9/16, at 48–54. With respect to the bill passed at Redner's, the jury returned a guilty verdict as described *supra* but acquitted Appellant of theft by deception.

The trial court ordered a presentence investigation report. N.T., 3/9/16, at 76. On May 25, 2016, the trial court sentenced Appellant to an aggregate sentence of twelve months of probation and ordered her to pay costs, fines, and restitution. Appellant filed post-sentence motions on

May 31, 2016, challenging the sufficiency of the evidence and contending that the jury's verdict was against the weight of the evidence. The trial court denied the post-sentence motions on October 11, 2016, Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

Whether [Appellant's] motion for a judgement [sic] of acquittal should be granted due to the Commonwealth's failure to present sufficient evidence that the subject currency was counterfeit, that [Appellant] was aware of the forgery and that she conspired with two males at the Market?

Whether the jury's verdicts were against the weight of the evidence?

Appellant's Brief at 4.

Appellant first argues that the evidence presented at trial was insufficient to support the jury verdict. Specifically, Appellant asserts that the Commonwealth failed to prove: (a) the $100 bill tendered by Appellant was counterfeit; (b) Appellant knew the bill was counterfeit; and (c) Appellant conspired with Corona-Gavilan and Munoz to pass the counterfeit bill. Appellant's Brief at 10–12. We address these three sub-parts together.

Our standard of review for the sufficiency of the evidence is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test,

we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 408–409 (Pa. Super. 2016), *appeal denied*, __ A.3d __, 2017 WL 1337940, 701 MAL 2016 (Pa. April 11, 2017) (quoting *Commonwealth v. Brooks*, 7 A.3d 852, 856–857 (Pa. Super. 2010)).

The relevant statute, in pertinent part, provides that a person is guilty of forgery "if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor: (3) utters any writing which he knows to be forged." 18 Pa.C.S. § 4101(a)(3). Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that the bill was counterfeit because the Commonwealth did not present expert testimony regarding the operation of the scanner or the significance of the matching serial numbers. Appellant's Brief at 10. Expert testimony was required, according to Appellant, because Mr. Krick was not able to describe how the scanner detects counterfeit bills and,

ostensibly, whether the scanner may be misled to identify legitimate bills as fraudulent. *Id.* Appellant additionally maintains that insufficient evidence exists to establish her knowledge of the counterfeit bills as evidenced by the fact that she gave her contact information to Mr. Krick and waited at the store for the police. *Id.* at 10–11.

Finally, Appellant challenges the existence of sufficient evidence to establish a conspiracy among Appellant and the two men. Appellant's Brief at 11–12. Pennsylvania law provides that a person is guilty of conspiracy "if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903(a)(1). Appellant asserts there is no evidence in the record to support the jury's conclusion that Appellant was travelling with the two men. Appellant's Brief at 12.

The Commonwealth responds that expert testimony was unnecessary herein because the conclusion inferred from the scanner's rejection of the bill was reinforced by both Mr. Krick's description of the bill's irregularities and the surrounding circumstances. Commonwealth's Brief at 9–10. The Commonwealth then maintains that due to Mr. Krick's testimony that Appellant tried to leave the store, the jury was permitted to infer that attempting to leave the store, carrying a large amount of cash, and secreting cash in an empty cigarette box are consistent with knowing

involvement. *Id.* at 10–11. Finally, the Commonwealth refutes Appellant's challenge to the conspiracy verdict with Trooper Huffstutler's testimony that Appellant indeed was travelling with the two men and the threesome's photo identifications, which establish that Appellant, Corona-Gavilan, and Munoz all reside in Brooklyn, New York. *Id.* at 11–12.

The trial court agreed with the Commonwealth on each of Appellant's challenges. Trial Court Opinion, 10/12/16, at 7–11. The trial court concluded that expert testimony was not required as a matter of law, and it supported its conclusion with citation to unpublished memoranda wherein this Court adhered to the judgment of laypersons or police officers to establish the counterfeit nature of currency. *Id.* at 7–8. Moreover, the trial court noted that both Mr. Krick and Trooper Huffstutler immediately determined that the bills were counterfeit, and the jurors themselves were able to inspect the bills before returning a verdict. *Id.* at 9. The trial court also agreed with the Commonwealth that the evidence established both Appellant's knowledge that the $100 bill was counterfeit and Appellant's participation in the conspiracy. *Id.* at 9–11.

Our review of the record compels our conclusion that the trial court's denial of Appellant's sufficiency claim was proper. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find sufficient evidence to support the conclusions that the bill Appellant passed

was counterfeit, that Appellant knew the bill was counterfeit, and that she conspired with Corona-Gavilan and Munoz to pass counterfeit currency.

As a preliminary matter, we reject Appellant's proposition that the Commonwealth must proffer expert testimony to support the inference that a bill rejected by two scanners is counterfeit. As noted above, wholly circumstantial evidence is sufficient to support a jury verdict. *Mucci*, 143 A.3d at 409. Thus, whether the Commonwealth has met its burden without expert testimony is a determination within the province of the jury. The jury was entitled to find, absent a concrete confirmation that the $100 bill was counterfeit, that the Commonwealth had presented sufficient circumstantial evidence to prove beyond a reasonable doubt that the currency was counterfeit.

Here, the circumstantial evidence offered by the Commonwealth to prove the $100 bill was counterfeit was sufficient. In addition to the scanners' error codes, Mr. Krick testified that the bill's color and watermark were different from the hundreds of other bills that he had handled. N.T., 3/9/16, at 15. The surrounding circumstances, including the similar $100 bill in Appellant's purse and the large amount of cash found in Appellant's purse and the Ford Excursion, further support the conclusion that the $100 bill tendered by Appellant at Redner's was counterfeit. Because the Commonwealth "need not preclude every possibility of innocence," *Mucci*, 143 A.3d at 409, we conclude that sufficient circumstantial evidence

supports the trial court's denial of Appellant's post-sentence motion with respect to the jury finding that the $100 bill was counterfeit.

We likewise conclude that the record supports the determination that Appellant knew the $100 bill was counterfeit. While Appellant underscores the fact that she remained at the store when the police arrived, Mr. Krick testified at trial that Appellant originally had attempted to leave the store. We may not "substitute our judgment for the fact-finder." *Mucci*, 143 A.3d at 409. The jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* In viewing the evidence in the light most favorable to the Commonwealth, we will not disturb the creditability determinations of the jury where a basis for the determination is found in the record. N.T., 3/9/16, at 14, 20, 26, 32, 43.

Here, Appellant attempted to pay for an eleven-dollar purchase with a $100 bill, despite access to smaller currency amounting to $873. When the $100 bill was found to be fraudulent, Appellant sought to leave the scene. Further, Appellant was plausibly linked to the black backpack containing women's toiletries because she was the only woman in the group, and Trooper Huffstutler testified that the bills found within the backpack were "the same, or substantially the same" as both the $100 bill used by Appellant at Redner's and the $100 bill found in Appellant's purse. N.T.,

3/9/16, at 34. Thus, the facts in the record support a finding of knowledge, as required for a forgery conviction.

Finally, we conclude that the trial court's findings of fact with respect to the conspiracy verdict are supported by the record. While Appellant waited for the police, she was joined by two men, one in the store and one outside of the store. N.T., 3/9/16, at 13–14. The man inside tried to leave the store with her. *Id.* at 13–14, 20. Trooper Huffstutler obtained a warrant to search the Ford Excursion based on his understanding that the vehicle was connected to the incident with Appellant's $100 bill. *Id.* at 30. Trooper Huffstutler's inference that the three were travelling together is supported by the group's respective photo identifications, which establish that Appellant and both men reside in the same out-of-state location. Thus, the record evidence supports the jury's conclusion that three Brooklyn residents, in the same grocery store in central Pennsylvania, had travelled there together in the same vehicle. Because the jury rationally linked Appellant to the Ford Excursion, the jury was entitled to infer that she was the owner of the black backpack, given that the backpack contained women's toiletries and Appellant was the only woman in the group. Thus, the record provides a basis for the trial court to uphold the jury's conclusion that Appellant acted pursuant to an agreement with Corona-Gavilan and Munoz to pass the $100 bill at Redner's.

Appellant's second challenge is to the trial court's denial of her weight-of-the-evidence claim. Appellant's Brief at 12–13. We have held that "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting *Commonwealth v. Clay,* 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v.*

*Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting *Widmer*, 744 A.2d at 751–752).

We observe that Appellant's weight-of-the-evidence argument merely rehashes her claims regarding the sufficiency of the evidence. Evidence presented by Appellant neither supports the possibility that the $100 bill was legitimate nor raises questions regarding the testimony of Mr. Krick and Trooper Huffstutler. Upon our review of the record, we agree with the trial court that as the ultimate fact-finder, the jury properly weighed the evidence. We discern no abuse of discretion by the trial court in concluding that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2017