J-S08038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH MIDDLETON | : | |
| | : | |
| Appellant | : | No. 1567 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 6, 2024
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0001309-2023


BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 22, 2025**

Isaiah Middleton appeals from the judgment of sentence entered after a jury found him guilty of aggravated assault, simple assault, resisting arrest, and disorderly conduct.[1] For these offenses, the court sentenced Middleton to a fifteen-to-thirty-month term of incarceration to be followed by two years of probation. On direct review, Middleton challenges the sufficiency of evidence sustaining his aggravated and simple assault convictions. We affirm.

As recounted by the trial court:

On April 8, 2023[,] Officer Pablo Vasquez responded to a domestic disturbance call [in the 700 block of] North 5th Street, Allentown,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 2702(a)(3)/(c)(1), 2701(a)(1), 5104, and 5503(a)(1), respectively. Relatedly, following a bench trial, the court found Middleton not guilty of public drunkenness. **See** 18 Pa.C.S. § 5505.

Pennsylvania 18102. At trial, Officer Vasquez testified that he observed [Middleton] and the mother of [Middleton's] child arguing at the scene. Officer Vasquez and other officers tried to keep the parties separate in [an effort] to deescalate the situation. Though [Middleton] calmed down for some time, Officer Vasquez witnessed [Middleton] become extremely irate when he saw his mother-in-law carrying his infant[-]aged son. Officer Vasquez testified that [Middleton] attempted to take his child away from his mother-in-law, such that both he and his mother-in-law ended up both pulling back and forth on the child. Another officer on the scene, Officer Carman Wega, placed his left hand on [Middleton's] shoulder and attempted to calm [Middleton] down, but this effort was unsuccessful. Officer Vasquez testified that[,] after Officer Wega placed his hand on [Middleton], [Middleton] swung at Officer Wega. [Middleton] then began walking away from the officers and towards his father to embrace him. [Middleton] was ultimately separated from his father and placed under arrest; Officer Vasquez stated that [Middleton] flailed his arms away from officers before he was eventually handcuffed by him and Officer Wega. Officers Vasquez and Wega testified that [Middleton] had to be forcibly walked to and placed in a police vehicle. As he was walked to the police vehicle, [Middleton] engaged in "mule-kicking" Officer Wega. Officer Wega testified that [Middleton's] mule-kicks landed on him above his right kneecap, causing pain which subsided over the course of the following couple of days.

Officer Wega stated at trial that he had placed his hand on [Middleton's] shoulder to try to encourage him to move away from the aforesaid child and his mother-in-law when he observed [Middleton] attempt to pull the child away from his mother-in-law. However, on cross-examination, after being shown body[ ]cam[era] footage captured by another officer on the scene, Officer Wega testified that the video depicted the child being handed off from mother-in-law to the mother of the child prior to Officer Wega placing his hand on [Middleton]. Officer Wega testified that when [Middleton] slapped his left hand down, he could not tell whether [Middleton] did so with an open hand, closed hand, or fist, but Officer Wega felt a stinging sensation causing slight pain in his hand. Officer Wega clarified that although he did not observe the child being handed off from mother-in-law to mother, he intervened out of concern for the safety of the child where [Middleton] was screaming, cursing, yelling, and trying to get at the child.

[Both] Paul Middleton, father of [Middleton], and [Middleton, himself,] presented testimony conflicting with the testimony of Officers Vasquez and Wega. Paul Middleton testified that he witnessed [his son] being argumentative at the scene, but denied observing [him] attempt to grab the child. He also denied that [his son] hit Officer Wega. Paul Middleton asserted that when Officer Wega reached [his son], [his son] dodged and pulled his arm away. [Middleton, himself,] testified that though he remembered the incident which led to his arrest, he did not remember all of the details of the incident. He stated that when he was speaking with his father on the night in question, he observed his father's face transform into the faces of other people. [Middleton] further noted that he recalled bits and pieces of his encounter with Officer Wega. He remembered being in pain and being punched, kicked, and flipped but did not remember ever swinging at or kicking at any police officers.

Trial Court Opinion, 9/17/24, at 2-4 (record citations omitted).

After being found guilty of, *inter alia*, aggravated assault, the court sentenced Middleton to fifteen-to-thirty months of incarceration, to be followed by two years of probation. Middleton timely filed a notice of appeal and a court-ordered "concise statement" pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Middleton presents two interrelated questions for review:

1. Was the evidence presented at trial sufficient to support the aggravated assault and simple assault guilty verdicts where the testimony presented by the police officers was contradicted by video evidence presented at trial?

2. Was the evidence presented at trial sufficient to support the aggravated assault and simple assault guilty verdicts where the police officer victim did not sustain bodily injury and the evidence did not establish that Middleton attempted to cause injury?

*See* Appellant's Brief, at 4.[2]

"A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard." ***Commonwealth v. Collins***, 286 A.3d 767, 773 (Pa. Super. 2022). To resolve such claims, we employ a well-settled standard of review:

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Id.* (citations, brackets, and internal quotation marks omitted).

A person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" 18 Pa.C.S. § 2702(a)(3). "Police officer[,]" is an enumerated "officer[], agent[], employee[,] or other person[]" listed in subsection (c). *Id.* at § 2702(c)(1). For simple assault, a person is guilty if he "attempts to cause or intentionally, knowingly[,] or recklessly causes bodily injury to another." *Id.* at § 2701(a)(1).

For purposes of these statutes, "bodily injury" is defined as

---

[2] Middleton has not challenged the sufficiency of evidence underpinning his resisting arrest and disorderly conduct convictions.

"[i]mpairment of physical condition or substantial pain." *Id.* at § 2301. Finally, "intentionally," "knowingly," and "recklessly," as contained within the aggravated assault and simple assault statutes, are defined as follows:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.* at § 302(b)(1)-(3).

Middleton first argues that "[t]he evidence provided by both [body camera] videos does not corroborate the testimony provided by the two

- 5 -

officers." Appellant's Brief, at 12.[3] Middleton claims that the two officers described the genesis of Officer Wega's physical interaction with Middleton as being when the officer "had taken ahold of [Middleton's] shoulder because he saw [Middleton] and [Middleton's] mother-in-law engaged in a tug of war over [Middleton's] young son." *Id.* at 11. The two officers "testified that [Middleton] 'punched' Officer Wega's hand as he was attempting to avoid being grasped by the officer." *Id.* Through the officers' testimony, Officer Wega placed his hand on Middleton's shoulder, but then Middleton responsively pushed the officer and slapped his left hand down, leading to Middleton's arrest a short time thereafter. *See id.*

In relying on the two officer-worn body camera videos captured that day and admitted as evidence, Middleton asserts that he "did not have ahold of the child when Officer Wega pulled him." *Id.* at 12. Moreover, Middleton suggests that the videos do not show him swinging at Officer Wega, "but, rather, he simply pushed him away, and he backed into the alley facing the officers who [were] converging on him." *Id.* Middleton argues that Officer Vasquez "acknowledged that [the body camera videos] did not show the child

_____

[3] To the extent Middleton challenges the weight, rather than the sufficiency, of evidence, our Supreme Court has held that such a "challenge to the sufficiency of the evidence must fail[,]" where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that appellant provides goes to the weight of the evidence. *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009) (alternatively dismissing sufficiency claim raising weight of evidence arguments).

being pulled . . . by [Middleton]." ***Id.*** Moreover, Officer Wega "admitted that the child he was concerned with protecting . . . had been passed off to someone else before he put his hand on [Middleton]." ***Id.*** at 13.[4]

In comparing the officer testimony to the body camera video, Middleton posits that "[t]here was no reason for Officer Wega to prevent [Middleton] from engaging in a tug of war with his mother-in-law over the child, because the child had already been given to another adult." ***Id.*** at 14. Additionally, Middleton avers he did not punch Officer Wega, nor did he intend to harm the officer after his arrest. Middleton suggests that given the chaotic nature of the scene, with six or seven police officers present trying to defuse the situation, "[i]t is not surprising that Officer Vasquez and Officer Wega were mistaken about the actions of [Middleton.]" ***Id.*** at 15. Distilled down, Middleton's ultimate point is that the body camera videos establish "that [he] did not strike at the officers, or if he came into contact with them, he did not do so with the intent to cause bodily injury." ***Id.***

_____

[4] Middleton also argues that Officer Wega testified that after Middleton had been arrested, he was kicking wildly; however, through that officer's testimony, it could not be determined what he was aiming at, and the body camera video fails to provide any guidance on this issue. ***See*** Appellant's Brief, at 13-14. It is unclear the precise thrust of this argument, and it appears to go to the weight of the evidence, especially when juxtaposed against this section of his brief that attempts to show the incongruity between the officers' testimony and the body camera videos, but the record reflects that Officer Wega testified that Middleton "kicked" him and that "it was deliberate[.]" N.T. Jury Trial, 3/19/24, at 125.

The court found that "[a]lthough it was disputed whether the body[ ]cam[era] footage showed [Middleton] carrying out the swing[ing] and kicking at Officer Wega with the requisite *mens rea*, Officer Wega identified the points in his body[ ]cam[era] footage and police car cam[era] footage at which he claims [Middleton] struck his hand and kicked him at least twice." Trial Court Opinion, 9/17/24, at 8 (record citations omitted). Additionally, "Officer Vasquez's testimony regarding [Middleton's] swinging at and kicking Officer Wega was consistent with Officer Wega's testimony." *Id.*

"Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and laws of nature, then the evidence is insufficient as a matter of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000); **see Commonwealth v. Santana**, 333 A.2d 876, 878 (Pa. 1975) ("It is settled law in Pennsylvania that testimony in conflict with the incontrovertible physical facts and contrary to human experience and the laws of nature must be rejected.").

This Court has reviewed the body camera videos. The events took place at night and the resolution of the videos is quite low. Nevertheless, even if Middleton "did not have ahold of the child when Officer Wega" first came into physical contact with him, Appellant's Brief, at 12, Middleton fails to argue how this "fact" is relevant or, more importantly, which element or elements of

aggravated and simple assault have not been met.[5]

The scene was chaotic, with lots of shouting from multiple individuals, and there were children present. The Commonwealth concedes that Officer Vasquez's observation that Middleton attempted "to grab his child from the arms of his mother-in-law" was "not clearly captured" by the body camera video. **See** Commonwealth's Brief, at 8. However, its recitation of the events thereafter accords with our review of the body camera videos: (1) Officer Wega placed his hand on Middleton, seemingly in an effort to diffuse the tense situation; (2) Middleton slaps or pushes away the officer's hand; (3) Officer Wega and Middleton engage in a short scuffle; (4) Middleton, having broken free of Officer Wega, takes a bladed or aggressive stance[6] while backing up into the adjacent alleyway[7]; and finally, (5) the officers, after some amount of struggle, arrest Middleton. **See** Wega Body Camera, at 26:35-27:35;

---

[5] Middleton could be arguing, *inter alia*, that the officers are wholly unbelievable given that some of their testimony is contradicted or unsupported by videographic evidence, that Officer Wega was unjustified in his initial touching of Middleton, that Middleton was justified in his response to the officer's touching, etc. We will not guess which basis Middleton intended to advance. **See Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

[6] A "bladed stance" is described by Officer Wega as where an individual turns "one side of his body away . . . and clenches his fists and become[s] aggressive[.]" N.T. Jury Trial, 3/19/24, at 88.

[7] It is unclear to what extent Middleton's hands are closed while in this stance for a second or two. Nevertheless, his hands are clearly raised to shoulder level.

Vasquez Body Camera, at 26:10-27:10; Commonwealth's Brief, at 8-9.

For Middleton to suggest that he merely "pulled away from [Officer Wega] and backed into [an] alley[,]" Appellant's Brief, at 14, such contention is belied by the videographic evidence showing him make contact with Officer Wega as well as the officers' testimony establishing the same. Middleton also argues that his subsequent stance in the alley was one of defense, rather than offense, **see id.**, but does not clarify the distinction between the two or explain that argument's relevance.

Although there might be *some* divergence in the officers' testimony when compared to the body camera videos, Middleton has failed to demonstrate that this is "one of those rare cases" where videos, on sufficiency review, serve to provide a reversible basis insofar as they directly contradict the credibility determinations made by the jury. **But see Commonwealth v. Goral**, 2019 WL 4888503 at *4-5 (Pa. Super., filed Oct. 3, 2019) (Stabile, J., dissenting) (unpublished memorandum) (quoting **Commonwealth v. Griffin**, 116 A.3d 1139, 1143 (Pa. Super. 2015)) (finding that it was "one of those rare cases where a dash cam[era] video, included in the certified record, contradict[ed] the trial court's findings and credibility determinations[]"). As such, Middleton's first argument fails as there are no indicia that the videos serve to vitiate any of the elements of aggravated or simple assault.

In his related second issue, Middleton claims that he did not cause or attempt to cause "bodily injury" to Officer Wega, as it is statutorily defined. Middleton describes two incidents of "injury" that he purportedly caused: (1)

a stinging experience in Officer Wega's hand when Middleton pushed the officer's hand away in the initial physical interaction; and (2) knee pain from Middleton kicking Officer Wega when he was placed into the police car following his arrest.

For aggravated assault on an officer, pursuant to 18 Pa.C.S. § 2702(a)(3), "the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that [an appellant] intended to cause injury." *Commonwealth v. Mucci*, 143 A.3d 399, 409 (Pa. Super. 2016) (citation omitted). Moreover, under both the simple and aggravated assault statutes, an "attempt" to cause bodily injury is sufficient.

Middleton argues that in the initial interaction, he "did not strike Officer Wega, he merely pushed or shoved his hand away in order to leave." Appellant's Brief, at 18. When he was being placed into the police car following his arrest, Middleton, despite admittingly kicking, avers that he was not aiming at Officer Wega. *See id.* Although the officer suffered a knee injury from this kicking, it "was incident to [Middleton's] desire not to be placed in the vehicle, not because [he] intended to harm [the officer]." *Id.* Stated differently, Middleton's actions were an attempt "to avoid transportation" and "were not assaultive" nor "were they so violent as to be likely to cause injury." *Id.* at 19.

Officer Wega testified that Middleton "kicked [him] in [his] right leg . . . at least twice." N.T. Jury Trial, 3/19/24, at 93, 98.[8] These kicks involved "a lot of power." *Id*. The kicks landed "[r]ight above [his] kneecap." *Id.* at 99. The knee "buckled a little bit . . . [and caused a] significant amount [of pain]." *Id.* In addition to the officer's described pain coming from his initial encounter with Middleton, the kicks, and damages caused thereby, were included in "the Injured Officer Report," written after the incident. *Id.* at 100. Although Officer Wega did not "know where [Middleton] was aiming his kick[,]" *id.* at 125, the officer also stated that the kicking from Middleton "was deliberate[.]" *Id.* Nevertheless, Middleton appears to conflate the officer's lack of knowledge as to where Middleton was aiming with Middleton's lack of intent to inflict bodily injury.

In viewing the officers' testimony in the light most favorable to the Commonwealth, there was evidence of record for the jury to conclude that Middleton acted with sufficient intent to cause bodily injury, meeting the requisite elements of both aggravated and simple assault. To the extent that Middleton asks this Court to overrule the jury's credibility findings, which, *inter alia*, found Officer Wega truthful in his assessment that Middleton intentionally kicked him, we are bound by such determinations. ***See Commonwealth v.***

---

[8] Paralleling Officer Wega's testimony, Officer Vasquez testified that Middleton "mule kick[ed] Officer Wega from the back a couple times, strik[ing] Wega in the leg[.]" N.T. Jury Trial, 3/19/24, at 49, 54.

*Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006) ("It is not for this Court to overturn the credibility determinations of the fact-finder.").

Accordingly, as neither of Middleton's two claims on appeal warrant relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2025